UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DANIEL D. BROWNE,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-298
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 6), the Commissioner's response in opposition (Doc. 11), and plaintiff's reply memorandum (Doc. 14).

**I. Procedural Background**

Plaintiff filed an application for DIB in December 2007, alleging a disability onset date of January 20, 2006. (Tr. 69). Plaintiff's application was denied initially and upon reconsideration. Following a hearing, administrative law judge (ALJ) Donald A. Becher issued a decision on January 5, 2010, finding that plaintiff was not disabled. (Tr. 69-80). Plaintiff subsequently filed a new application for DIB on January 25, 2010, again alleging a disability onset date of January 20, 2006,[1] due to complications from brain surgery. (Tr. 179-84). Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before ALJ Deborah Smith. Plaintiff and a vocational expert (VE) appeared and testified at the hearing. On March 21, 2012, the ALJ

---

[1] Plaintiff subsequently amended his disability onset date to October 25, 2010. (Tr. 29, 242).

issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

    **B.    The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] last met the insured status requirements of the Social Security Act on June 30, 2011.
>
> 2. The [plaintiff] did not engage in substantial gainful activity during the period from his amended alleged onset date of October 25, 2010 through his date last insured of June 30, 2011 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the [plaintiff] had the following severe impairments: status post hematoma evacuation, high risk factor for seizures, dysthymic disorder, and cognitive disorder not otherwise specified (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, the [plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The [plaintiff] should never climb ladders, ropes, and/or scaffolds and should avoid exposure to unprotected hazardous heights and hazardous machinery. Moreover, the [plaintiff] is limited to one or two-step tasks in a work

environment free of fast-paced production requirements, involving only simple, work related decisions, and with few, if any, workplace changes. Finally, the [plaintiff] should have only occasional interaction with the public, co-workers, and/or supervisors.

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born [in] . . . 1950 and was 61 years old, which is defined as an individual closely approaching retirement age, on the date last insured. (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from October 25, 2010, the alleged onset date, through June 30, 2011, his date last insured (20 C.F.R. 404.1520(g)).

(Tr. 11-21).

C. **Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[2]Plaintiff's past relevant work was as a dredge operator, Hod carrier, and bulldozer operator. (Tr. 19, 58-59).
[3]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform jobs such as cleaner, general laborer, hand packer, and machine feeder operator. (Tr. 20, 60-62).

4

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff's sole assignment of error is that ALJ Smith erred by finding that "there was no new and material evidence since the prior ALJ decision of January 5, 2010," and adopting ALJ Becher's residual functional capacity (RFC) finding pursuant to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-4(6). (Doc. 6 at

1). Plaintiff asserts that ALJ's Smith's determination is erroneous as there is new and material evidence establishing that plaintiff's condition has worsened and, consequently, the ALJ should not have adopted the prior RFC formulation. Plaintiff identifies this new and material evidence as: (1) electroencephalography (EEG) testing evidence from October 26, 2010, which was consistent with a diagnosis of a a seizure disorder and which was later confirmed by plaintiff's treating neurologist; and (2) neuropsychological testing evidence from October 25, 2010, showing deficits in plaintiff's attention and concentration not accounted for by the prior RFC formulation. Plaintiff argues ALJ Smith failed to properly evaluate this evidence and improperly ignored the neuropsychological evidence. Plaintiff therefore seeks reversal of ALJ Smith's decision and an award of disability benefits or, alternatively, remand for further proceedings, including a redetermination of plaintiff's RFC given this new evidence.

In *Drummond*, the Sixth Circuit held that principles of *res judicata* apply to the Commissioner's decisions regarding whether a claimant is eligible for social security benefits. *Drummond*, 126 F.3d at 841. The Sixth Circuit held that in the absence of new evidence or changed circumstances, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id*. at 842. The Commissioner has recognized the binding effect of findings made in a prior adjudication on subsequent adjudicators:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998).

It is the claimant's burden to present new and material evidence demonstrating a change in his or her condition since the prior ALJ determination. *See Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993) ("when a plaintiff previously has been adjudicated not disabled, [he] must show that [his] condition so worsened in comparison to [his] earlier condition that [he] was unable to perform substantial gainful activity"). *See also McCracken v. Comm'r of Soc. Sec.*, No. 1:08-cv-327, 2009 WL 2983049, at *10 (S.D. Ohio Sept. 14, 2009) ("new and material evidence must document a *significant* change in the claimant's condition") (emphasis in original). Evidence is "new" if it was "'not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 647 (6th Cir. 2013) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is considered "material" where the claimant demonstrates "that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim" if the new evidence had been considered. *Id.* (quoting *Sizemore v. Sec'y of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988)).

Here, ALJ Smith concluded that she was bound by ALJ Becher's prior RFC determination under *Drummond* and AR 98-4(6) as there was no new and material evidence warranting a re-determination of plaintiff's RFC. (Tr. 9). ALJ Smith noted the abnormal EEG findings, but determined that it and the other later-generated treatment and medical opinion evidence did not warrant departing from ALJ Becher's RFC formulation. Substantial evidence supports ALJ Smith's determination.

By way of background, in 2002, plaintiff fell down the stairs at home and underwent brain surgery and then rehabilitation. (Tr. 36-37). Following surgery, plaintiff was treated with

Dilantin as a prophylactic measure to prevent seizures. (Tr. 37). Plaintiff's severe impairments of status post hematoma evacuation and high risk factor for seizures are the result of this accident.

Plaintiff claims that the EEG and neuropsychological testing results are new and material evidence that ALJ Smith failed to properly consider in adopting ALJ Becher's prior RFC formulation. The October 26, 2010 EEG was abnormal and included findings of "focal slowing over the left temporal head region . . . consistent with a focal disturbance of cerebral function" and "[e]pileptiform activity over the left temporal head region . . . consistent with an area of focal cortical irritability and a process of epileptogenic potential . . . most consistent with a diagnosis of seizures of partial onset." (Tr. 356-57). In November 2011, plaintiff's treating neurologist, Michelle Bowman, M.D., saw plaintiff for a follow-up visit and noted that he was continued on Dilantin as a preventative measure due to the abnormal EEG showing epileptiform activity.[4] (Tr. 387). Plaintiff reported that since April 2011, when his Dilantin dosage was reduced from 200 mg to 100 mg, he had experienced four episodes during which he forgot where he was for approximately 30 seconds. (Tr. 387-88). Plaintiff further reported that he had been able to re-orient after several minutes. (Tr. 388). He did not believe he lost consciousness or had any motor symptoms or falls during these episodes. (Id.). Dr. Bowman opined that "these episodes are certainly concerning for seizure" and that "[i]t would be helpful to hear from someone that can provide collateral regarding these episodes and [plaintiff's] functional capacity, in general." (Tr. 390).

---

[4] Epileptiform activity "is the name given to the changes in brain activity, which are commonly seen in people who have epilepsy." See http://www.epilepsysociety.org.uk/epilepsy-and-diagnosis#.U0QBmFckFWw (last visited April 8, 2014).

8

Plaintiff asserts that, contrary to ALJ Smith's determination, this new EEG evidence[5] showing epileptiform activity, when considered in conjunction with Dr. Bowman's notation that his "time loss" episodes are "concerning for seizure," is new and material evidence necessitating a new RFC formulation. (Doc. 6 at 4). Plaintiff acknowledges that ALJ Smith discussed the EEG evidence and Dr. Bowman's subsequent treatment notes, but asserts that the ALJ failed to provide the required rationale supporting her determination that this new evidence was not material. (*Id.*, citing Tr. 12). Plaintiff further asserts that without a medical opinion interpreting the data from the EEG testing, ALJ Smith's finding that it was not material lacks substantial support thus necessitating remand. The undersigned disagrees.

While plaintiff does not clearly explain how the EEG evidence is material, *i.e.*, how it would have led to an outcome different from the prior decision, he appears to posit that the finding of epileptiform activity on the EEG taken with his reports of "time loss" episodes and Dr. Bowman's notation support the conclusion that his seizure impairment has worsened such that it causes functional limitations not accounted for by the prior RFC formulation. Yet, plaintiff does not articulate or put forth any evidence of additional limitations nor does he cite to any medical evidence – not even a diagnosis – establishing that he has a seizure disorder aside from the severe impairment of high risk factor for seizures. Plaintiff misstates the evidence by asserting that Dr. Bowman's notation that his "time loss" episodes are "concerning" is a medical opinion that he was "likely having episodic seizure activity." (Doc. 14 at 2, citing Tr. 390). Dr. Bowman did not offer any opinion as to the EEG results; rather, she simply noted that plaintiff's self-reports of "time loss" episodes were "concerning" and stated that it would be helpful to have information

---

[5]Plaintiff references a prior 2002 EEG containing normal results that is not part of the record before the Court. *See* Doc. 6 at 4.

from a witness to one of these episodes. *See* Tr. 390. This limited evidence, in the absence of any diagnosis of or other evidence showing the existence of a seizure disorder, is insufficient to show that plaintiff's condition has significantly changed such that the ALJ was required to formulate a new RFC. *See McCracken*, 2009 WL 2983049, at *10.

Moreover, ALJ Smith's determination that plaintiff's abnormal EEG result was not material is substantially supported by other medical evidence of record. ALJ Smith stated that "the medical evidence of record reveals that [plaintiff]'s high risk factor for seizures is not that severe." (Tr. 16). To support this finding, ALJ Smith cited to evidence post-dating the abnormal EEG test showing that there is no documented instance of plaintiff having a seizure. (Tr. 16, citing Tr. 340, 387). *See also* Tr. 343 (January 2011 treatment notes from the VA hospital provide that plaintiff has had no seizures in the eight years since he was injured). ALJ Smith acknowledged that plaintiff reported four seizure-like episodes in November 2011, but that this occurred after he was receiving a lower dose of Dilantin and he reported no other occurrences once this medication was adjusted. (*Id.*, citing Tr. 387-88). *See also* Tr. 49-50, 387-88 (plaintiff testified at the February 2012 ALJ hearing that he had only had four "time loss" episodes since 2002, which correlates with his report to Dr. Bowman in November 2011). Given the absence of a diagnosis of a seizure disorder and the evidence showing that plaintiff's "time loss" episodes ceased with an increased dosage of Dilantin, it was reasonable for ALJ Smith to determine that the abnormal EEG result was not new and material evidence necessitating a new RFC formulation.[6]

---

[6]To the extent plaintiff argues the ALJ was required to obtain testimony from a medical expert to interpret the "raw data" from the EEG test to determine its materiality (Doc. 6 at 5), this argument is not well-taken. Plaintiff bears the burden of presenting new and material evidence showing a change in his seizure condition. *Casey*, 987 F.2d at 1232-33. Consequently, it was incumbent upon plaintiff, not the ALJ, to put forth evidence establishing the

10

Plaintiff also contends the finding of no new and material evidence lacks substantial support because ALJ Smith failed to address the results of plaintiff's neuropsychological testing.[7] This testing was performed by Diana Rigrish, Psy.D., on October 25, 2010, at the Veterans Affairs Hospital where plaintiff receives neurological care to assess plaintiff's complaints of memory difficulties. (Tr. 352-55). Plaintiff reported instances of "increased forgetfulness (*e.g.* forgetting why he went into a room) and [having] to write everything down or he would forget." (Tr. 352). Plaintiff also reported a recent incident where he was unable to recognize his surroundings despite being one block from home; he eventually recognized where he was through "self talk." (Tr. 352-53).

The testing revealed that plaintiff's estimated Full Scale IQ is in the High Average Range; his visual-spatial perception and construction is intact; and his performance in word finding is high average with a mild variability in verbal fluency. As to plaintiff's visual memory, he has intact nonverbal recall, with delayed recall of complex geometric design in the high average range. On verbal recall, plaintiff has low average learning for a short story; delay recall is average with a 93% retention rate. Plaintiff performed at an average level in memorizing a word list, with low average performance upon delay. Plaintiff's overall memory performance suggested that "he is able to encode and consolidate new information, but [has] mild difficulty with spontaneous recall especially when information lacked inherent structure, *i.e.*, not a primary memory disorder." Plaintiff exhibited difficulty with sustained/divided attention and problem

---

materiality of the EEG testing. *See Hollon ex re. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). Further, the ALJ has discretion in deciding whether to seek medical expert testimony. *See* 20 C.F.R. § 404.1527(e)(2)(iii); *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009).

[7]The tests administered were the Wechsler Test of Adult Reading, Denman Neuropsychology memory Scale Logical Story and Figure Recall Subtests, California Verbal Learning Test-Second Edition, Boston Naming Test, FAS and Animal Verbal Fluency, CLOX: An Executive Clock Drawing Test, Trailmaking Test, Audiotry Consonant Trigrams, Wisconsin Card Sort Test and the mood Assessment Scale. (Tr. 353).

solving on executive function testing; he had great difficulty staying on task on a complex card sorting task; and he frequently lost track of the sorting strategy. (Tr. 354).

The "Recommendations" portion of the testing report included the following:

> Although the evaluation suggests [plaintiff] has the ability to encode and consolidate new information, in day-to-day setting, the mild difficulty in retrieving information lacking inherent structure can mimic a memory disorder. As such, [plaintiff] should continue to write important information down to aid in later recall. Repetition of information will also help with encoding and consolidation processes.
>
> *****
>
> Given the mild executive dysfunction, [plaintiff] will benefit from external structure to optimize his day-to-day functioning. The benefits of established routines were reinforced. When completing tasks, [plaintiff] should avoid multitasking and keep distractions to minimal when possible.

(Tr. 355).

Plaintiff argues that the findings of mild difficulty in spontaneous recall and difficulties in executive functioning as evidenced by his difficulty on the card sorting task is new and material evidence. Plaintiff further argues that ALJ Smith's failure to discuss this evidence or explain her finding that it is not material warrants remand. While plaintiff concedes that the adopted RFC accounts for most of the findings from the neuropsychological testing, he contends the ALJ erred by not finding executive dysfunction to be a severe impairment and by not formulating a new RFC to account for his difficulties with sustained attention. Plaintiff's arguments are not well-taken.

At the outset, the Court notes that the "ALJ need not discuss every piece of evidence in the record for his decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 665 (6th Cir. 2004). The question is whether the ALJ's decision is substantially supported by the whole of the

record evidence. *Perales*, 402 U.S. at 401. ALJ Smith was therefore not required to address the neuropsychological testing evidence and her determination that there was no new and material evidence will stand provided that it is substantially supported by the record evidence as a whole. Regardless, review of the ALJ decision contradicts plaintiff's repeated assertions that ALJ Smith did not discuss this evidence. (Docs. 6 at 4; Doc. 14 at 1).

ALJ Smith addressed the neuropsychological testing evidence as follows:

On October 28, 2010,[8] an evaluating psychologist, Diana Rigrish, Psy.D., noted that [plaintiff]'s affect was flat and [plaintiff] reported significant personality changes, including angering easier and not feeling comfortable around people, especially crowds. [Plaintiff] reported increased forgetfulness. Dr. Rigrish noted that on measures of depression, [plaintiff] scored in the mildly to moderately depressed range. Dr. Rigrish remarked that test results suggested mild executive dysfunction with mild difficulty with spontaneous retrieval of information lacking inherent structure, which most likely represents the residuals of the traumatic brain injury.

*****

On October 28, 2010, Dr. Rigrish noted that [plaintiff]'s speech was fluent and content was logical and coherent, his mood was okay, and [plaintiff] denied any significant changes in his memory or other cognitive functions subsequent to his fall.

*****

On October 28, 2010, Dr. Rigrish opined that when completing tasks, [plaintiff] should avoid multitasking and keeping distraction to minimal when possible. This opinion, to the extent that it shows [plaintiff]'s ability to engage in sustained work-related activities, is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Therefore, Dr. Rigrish's opinion is accorded considerable weight.

(Tr. 12, citing Tr. 352, 354-55; Tr. 16, citing Tr. 352; Tr. 18, citing Tr. 355) (internal citations

---

[8]Review of the record reflects that while Dr. Rigrish created and entered her notes on October 28, 2010, the testing was actually performed on October 25, 2010. *See* Tr. 352.

omitted). In light of ALJ Smith's extensive discussion of the neuropsychological testing evidence and her determination that Dr. Rigrish's opinion should be accorded significant weight, the Court finds ALJ Smith did not err by "ignoring" plaintiff's neuropsychological testing evidence.

To the extent plaintiff argues ALJ Smith erred by not more fully explaining her finding that the neuropsychological evidence was not new and material, the Court disagrees. Notably, as stated above, plaintiff himself concedes that the prior RFC formulated by ALJ Becher and adopted by ALJ Smith arguably accounts for most of the findings of the neuropsychological testing. (Doc. 6 at 4). Plaintiff's concession demonstrates that this evidence would not have altered ALJ Becher's RFC formulation. Thus, it is unclear how the testing evidence is material. *Schmiedebusch*, 536 F. App'x at 647. ALJ Smith did not err by failing to provide a detailed explanation for her materiality determination.

Plaintiff also argues that ALJ Smith erred by not classifying his executive dysfunction as a severe impairment and by not formulating an RFC that accounts for his limited ability to sustain attention. A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). Plaintiff is not required to

establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimus* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers*, 486 F.3d at 243 n.2.

Plaintiff cites to no evidence establishing that the "mild executive dysfunction" found by Dr. Rigrish (Tr. 355) is a severe impairment. Notably, Dr. Rigrish characterized plaintiff's executive dysfunction as "mild" and opined that he could overcome this difficulty by not multitasking and minimizing distractions. (Tr. 355). Given Dr. Rigrish's classification of the dysfunction as "mild" and in the absence of any evidence otherwise establishing that it would be expected to interfere with plaintiff's ability to work, *Farris*, 773 at 90, ALJ Smith did not err by not classifying this condition as a severe impairment. Regardless, any such error would be harmless. Social Security regulations require that if one "severe" impairment exists, all impairments - severe or otherwise - must be considered in the remaining steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(e). Where an ALJ errs in finding a particular impairment "non-severe" in Step Two of the analysis, the error is harmless if the ALJ finds at least one severe impairment and continues to address each impairment in determining the claimant's RFC. *See Meadows v. Comm'r of Soc. Sec.*, No. 1:07-cv-1010, 2008 WL 4911243,

15

at *13 (S.D. Ohio Nov. 13, 2008) (citing *Maziarz v. Sec'y of H.H.S.* 837 F.2d 240, 244 (6th Cir. 1987)). ALJ Smith found that plaintiff had the severe impairments of "status post hematoma evacuation, high risk factor for seizures, dysthymic disorder, and cognitive disorder not otherwise specified" (Tr. 12) at Step Two of the sequential evaluation process and went on to consider Dr. Rigrish's findings of executive dysfunction (*id.*) in assessing plaintiff's RFC. Consequently, any error ALJ Smith committed by not finding severe executive dysfunction was harmless.

To the extent plaintiff argues the adopted RFC fails to account for his limited ability to maintain attention as evidenced by the neuropsychological testing, this argument is equally unavailing. The RFC includes speed and pace-based restrictions, as well as restrictions intended to accommodate plaintiff's decision-making limitations and limited ability to adapt to change. *See* Tr. 15 (the RFC limits plaintiff to "one or two-step tasks in a work environment free of fast-paced production requirements, involving only simple, work related decisions, and with few, if any, workplace changes."). Such accommodations adequately accommodate plaintiff's *mild* executive dysfunction found by Dr. Rigrish. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010) (holding that *moderate* limitations in a claimant's ability to concentrate are properly accommodated for by an RFC that contains speed- and pace-based restrictions). Consequently, ALJ Smith did not err by adopting the prior RFC as it includes accommodations for plaintiff's supported limitations in concentration.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 4/18/2014

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DANIEL D. BROWNE,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-298
Barrett, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).